Carl BAILEY, Individually and on Behalf of all Others Similarly Situated, Appellants,

v.

KEMPER CASUALTY INSURANCE COMPANY, et al., Appellees.

No. 06–01–00149–CV.

Court of Appeals of Texas, Texarkana.

Submitted April 25, 2002.

Decided July 11, 2002.

John R. Mercy, Mercy, Carter, Tidwell & Elliott, LLP, Texarkana, James A. Holmes, Wellborn, Houston, Adkison, Mann, Sadler & Hill, L.L.P., Henderson, for appellant.

Troy A. Hornsby, Miller, James, Miller & Hornsby, LLP, Texarkana, Veronica Carmona Czuchna, Jordan & Carmona, PC, Austin, for appellee.

Before GRANT, ROSS, and CORNELIUS,* JJ.

OPINION

Opinion by Justice GRANT.

Both parties appeal the order of the trial court granting class certification under TEX.R. CIV. P. 42(b)(2) and denying such certification under TEX.R. CIV. P. 42(b)(4) regarding Carl Bailey's action against numerous associated insurance companies (Kemper) for negligence, breach of contract, violation of the Texas Insurance Code, and declaratory judgment, seeking declaratory relief and statutory penalties.

Bailey contends the trial court erred in failing to find that common issues of law and fact predominate over questions affecting only individual members, thus denying certification under Rule 42(b)(4).

Kemper presents eight issues on cross-appeal. Kemper contends the trial court erred in certifying a class under a class definition proposed after the class certification hearing. Next, Kemper contends the trial court erred by certifying a fundamentally defective class definition. Further, Kemper contends the trial court erred in including a trial plan that is insufficient and fatal to the class certification. Kemper also contends the trial court erred in finding that Bailey met the requirements of commonality, typicality, and adequate representation. Finally, Kemper contends the trial court erred in finding that Kemper has acted or refused to act on grounds generally applicable to the class and that declaratory relief predominated the monetary relief sought.

Bailey purchased a standard Texas personal automobile liability insurance policy from appellee American Motorist Insurance Company (AMICO), a member of the Kemper Insurance Companies in 1999. In accordance with TEX. INS.CODE ANN. art. 5.06-3 (Vernon Supp.2002), the policy insured Bailey, members of his household, and passengers in his covered vehicles against medical expenses, lost earnings, and certain household expenses through

* William J. Cornelius, Chief Justice, Retired, Sitting by Assignment

coverage part B2 entitled "Personal Injury Protection (PIP)." Bailey selected a coverage limit of $5,000 per person. The policy included the customary "Assignment of Benefits" provision that read "Payments for medical expenses will be paid directly to a physician or other health care provider if we receive a written assignment signed by the covered person to whom such benefits are payable."

On November 29, 2000, Bailey suffered bodily injuries in a motor vehicle accident, resulting in lost wages and medical expenses. On December 18, 2000, AMICO received a request for payment from Dr. Charles Williams at East Texas Orthopedic Clinic, which alleged that Bailey's PIP benefits had been assigned in writing to Dr. Williams. Bailey does not dispute that he had executed an assignment of benefits form at Dr. Williams's request in connection with unrelated treatment in 1998, but contends that he did not intend for the assignment to apply to future treatment or charges. Bailey had comprehensive health insurance in effect at the time of his accident and intended for Dr. Williams to be paid by his health insurance carrier. AMICO issued the PIP payment to Dr. Williams on the same date Dr. Williams requested payment. Kemper did not receive the assignment before issuing payment and did not request a copy until Bailey's counsel contacted Kemper. The day after Dr. Williams submitted his request to AMICO, December 19, 2000, Bailey submitted an application for PIP benefits to AMICO by way of correspondence.

Bailey brought suit individually and on behalf of Kemper's many insureds from whom Kemper misdirected PIP benefits by naming health care providers as sole or additional payees on benefit checks. Bailey alleged negligence in failing to use ordinary care to ensure that PIP beneficiaries received timely payment of benefits to which they were contractually entitled and by failing to implement policies and procedures to comply with the Texas law and the terms of their policies. Bailey alleged Kemper breached contract in failing to make payment of PIP benefits directly and solely to the covered person. Bailey also alleged violation of the Texas Insurance Code by failing to make payment within sixty days of receipt of all items, statements, and reports reasonably requested and required under Article 21.55, Section 3(f), and by failing to properly issue payment when due under Article 5.06–3(d)(3). Tex. Ins.Code Ann. art. 21.55, § 3(f) (Vernon Supp.2002). Bailey sought a judicial declaration regarding the rights of the parties to the insurance agreement stating that both the insurance policy and the PIP statute require Kemper to issue payment of PIP benefits directly to the coverage beneficiary in the absence of a writing signed by that person and delivered to Kemper before the payment of benefits directing or consenting to payment directly or solely to the health care provider. Bailey also sought to recover the statutory damages, interest, and attorney's fees provided for in Articles 5.06–3 and 21.55 of the Texas Insurance Code. Tex. Ins.Code Ann. arts. 5.06–3, 21.55 (Vernon Supp. 2002). Bailey requested class certification under both Tex.R. Civ. P. 42(b)(2) and 42(b)(4).

Bailey's request for class certification was granted in part and denied in part. The trial court denied class certification under Rule 42(b)(4), but granted certification under 42(b)(2) for the purposes of adjudicating Bailey's claims for declaratory and injunctive relief. Texas Rule of Civil Procedure 42(d) provides that when appropriate, an action may be brought or maintained as a class action with respect to particular issues. The trial court did not certify the class for the purpose of adjudicating Bailey's claims regarding neg-

ligence, breach of contract, or violation of the Texas Insurance Code Articles 21.55, Section 3(f) and 5.06–3(d)(3). The issues on appeal regarding the propriety of granting certification under Texas Rule of Civil Procedure 42(b)(2) and denying certification under Rule 42(b)(4) are thus limited to Bailey's claims for declaratory and injunctive relief.

**Standard of Review**

This is an interlocutory appeal. Our jurisdiction over an appeal from an interlocutory order certifying or refusing to certify a class under Texas Rule of Civil Procedure 42 is provided by TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(3) (Vernon Supp.2002).

■ We review the decision of the trial court in certifying or refusing to certify the class for abuse of discretion. *See Hi–Lo Auto Supply, L.P. v. Beresky,* 986 S.W.2d 382, 386 (Tex.App.-Beaumont 1999, no pet.). A trial court abuses its discretion only if it "fails to properly apply the law to the undisputed facts or acts arbitrarily, unreasonably, or without reference to any guiding principles." *Henry Schein, Inc. v. Stromboe,* 28 S.W.3d 196, 200–01 (Tex. App.-Austin 2000, pet. dism'd w.o.j.). In conducting this review, we must view the evidence in the light most favorable to, and indulge every presumption in favor of, the trial court's action. *Entex v. City of Pearland,* 990 S.W.2d 904, 909 (Tex.App.-Houston [14th Dist.] 1999, no pet.). An appellate court may not substitute its judgment for that of the trial court, even if it would determine the issues differently than the trial court. *Forsyth v. Lake LBJ Inv. Corp.,* 903 S.W.2d 146, 149 (Tex.App.-Austin 1995, writ dism'd w.o.j.).

■ The party seeking class certification has the burden to establish its right to a class action. *See St. Louis Southwestern Ry. Co. v. Voluntary Purchasing Groups, Inc.,* 929 S.W.2d 25, 30 (Tex.App.-Texarkana 1996, no writ). The movant must demonstrate that an identifiable class exists and is susceptible to precise definition. *Intratex Gas Co. v. Beeson,* 22 S.W.3d 398, 403 (Tex.2000); *Charlie Thomas Courtesy Leasing, Inc. v. Taylor,* 44 S.W.3d 684, 687 (Tex.App.-Houston [14th Dist.] 2001, no pet.). The movant must also establish that (1) the class is so numerous the joinder of all members is impracticable, (2) there are issues of law or fact common to the class, (3) the claims and defenses of the representative parties are typical of those of the class, and (4) the representative parties will fairly and adequately represent the interests of the class. TEX.R. CIV. P. 42(a).

In addition, the party seeking class certification must establish that the suit falls within at least one of four enumerated categories of actions. TEX.R. CIV. P. 42(b)(1)-(4). Rule 42(b)(2) provides for class treatment when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole...." Rule 42(b)(4) provides for class treatment when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The rules allow suits to be maintained as class actions, when appropriate, only with regard to particular issues or to be divided among subclasses. TEX.R. CIV. P. 42(d). To sustain the burden, the movant must show some facts to support certification. *Voluntary Purchasing Groups, Inc.,* 929 S.W.2d at 30–31.

■ Rule 42(c)(1) provides in part, "As soon as practicable after the com-

mencement of an action brought as a class action, the court shall, after hearing, determine by order whether it is to be so maintained." Tex.R. Civ. P. 42(c)(1); *Mahoney v. Cupp,* 638 S.W.2d 257, 260 (Tex.App.-Waco 1982, no writ). This provision requires the proponent of the class action to both plead the elements of a class action found in Rule 42(a) and (b) and prove those elements at a hearing set as soon as practicable after the petition is filed. *Mahoney,* 638 S.W.2d at 260; *also see Duncan v. Dripping Springs Indep. Sch. Dist.,* 612 S.W.2d 644, 647 (Tex.Civ.App.-Austin 1981, no writ). However, Tex.R. Civ. P. 42(c)(1) provides that the trial court can alter, amend, or withdraw certification at any time prior to final judgment. The trial court is vested with the responsibility to manage and the tools to respond to changes in the case, as the contours of a case may change throughout the pendency of the suit. *See Beeson,* 22 S.W.3d at 407.

### Class Definition–Hearing

■ Kemper first contends the trial court erred in certifying a class without holding an additional certification hearing on the class definition certified, denying Kemper due process and the hearing required by Tex.R. Civ. P. 42(c).

■ Due process under the federal and Texas constitutions requires the nonmovant to the motion to certify a class action be given notice of the hearing held to determine class certification and the issue of class certification will be addressed at the hearing, and be given an opportunity to be heard. *See Rio Grande Valley Gas Co. v. City of Pharr,* 962 S.W.2d 631, 647 (Tex.App.-Corpus Christi 1997, pet. dism'd w.o.j.). Texas Rule of Civil Procedure 42(c)(1) requires that the court hold a certification hearing before determining whether a proposed class may be maintained.

■ A properly defined class is essential to the maintenance of a class action, and absent a cognizable class it would be impossible to determine whether the class satisfies the requirements of Rule 42(a) and ·(b). *Beeson,* 22 S.W.3d at 403. The movant bears the burden to demonstrate that an identifiable class exists and is susceptible to precise definition. *Id.; Taylor,* 44 S.W.3d 684. The movant usually attempts to meet this burden by presenting one or more proposed class definitions to the trial court. However, the trial court has broad discretion in defining a class, in evaluating the myriad of possible definitions and determining if one is right for certification, based on the available evidence. *Beeson,* 22 S.W.3d at 406. The Texas Supreme Court has indicated that in limited circumstances, it may even be appropriate for appellate courts to redefine a class to correct infirmities in the definition certified by the trial court. *Id.* at 407. Therefore, the trial court, in exercising its discretion regarding class certification, is not bound by the definition proposed by the parties.

■ Because a trial court is not bound by the class definitions proposed by the parties, we do not construe Rule 42(c)(1) to require the trial court to hold an additional certification hearing on each proposed class definition merely because the movant suggests the definition after a certification hearing. When the movants file an amended pleading affecting the essence of the allegations, changing the basis for certifying a class or adding an additional defendant, claiming a new cause of action or defense, or requesting additional relief, such that the class the plaintiff seeks to represent has been altered in such a way that the nonmovant or the class members would be adversely affected, the trial court may be required to hold an additional certification hearing

both so that the movant can provide materials sufficient to support the certification and so that the nonmovant may voice its opposition. *See City of Pharr,* 962 S.W.2d at 646–48 (the appellate court found that notice of the certification hearing was sufficient despite the alteration of class representative and additional request for certification as an opt-out rather than as a mandatory class four days before the hearing because alteration did not adversely affect appellant or class members); *In the Interest of M.M.O.,* 981 S.W.2d 72, 85–87 (Tex.App.-San Antonio 1998, no pet.) (the appellate court found that the certification hearing was insufficient where the record of the initial hearing could not meet the representative's burden of establishing that certification was proper under amended pleadings adding defendants, causes of action, and seeking additional relief, and the appellants did not have the same incentive to contest the certification at the initial hearing).

The definition of the proposed class in Bailey's original petition was:

All persons presently or formerly insured by the COMPANIES to whom the COMPANIES tendered personal injury protection benefits in the form of drafts naming health care providers as sole or additional payees since February 1, 1996 and from whom the COMPANIES had not received a written assignment of benefits executed by the person entitled to the benefits.

The trial court conducted a certification hearing on September 4, 2001. At the hearing, Kemper cross-examined Bailey, presented documentary evidence, and presented live testimony from its designated expert in the fields of insurance law and class-action procedure. Bailey also presented oral testimony. During the hearing, the trial court granted leave for Kemper to present further briefing on issues

and arguments not previously raised. The trial court also stated that the record was open and the court would allow the parties to respond and provide written summaries and case law on the issues. On September 14, Kemper filed a supplemental response. Bailey filed a First Amended Original Petition on October 4, 2001, removing various Kemper companies that did not write automobile liability insurance in Texas and requesting a different class definition:

All persons to whom or on whose behalf the COMPANIES paid personal injury protection benefits in the form of drafts naming health care providers as sole or additional payees since February 1, 1996.

Bailey also filed a reply to Kemper's supplemental response. On October 16, Kemper filed a Surreply in which Kemper objected to the timing of Bailey's amendments due to Kemper's inability to present evidence concerning whether the class as newly defined could satisfy the prerequisites, arguing that none of the prior briefing, evidence, or arguments addressed the new definition. Kemper briefly addressed why the newly proposed definition was improper, arguing that the definition was too broad, including those who had no claim. Kemper did not request a continuance, an extension of time, or an additional live hearing, and did not submit additional evidence in support of its position. The trial court entered an order on October 17, 2001, certifying the plaintiff class as defined in Bailey's amended petition.

Kemper argues that the revised definition materially altered the basis for inclusion in the class and dramatically expanded the gross number of class members and the legal issues that must be addressed in the action. Kemper also argues that none of the briefing submitted by the parties or the evidence presented to the court during

the hearing expressly addressed the new definition.

The amended pleading filed by Bailey after the certification hearing removed some of the defendants because Kemper had shown that some of the named companies did not issue the relevant insurance policies and proposed a different definition of the class Bailey sought to represent. The amended pleadings did not attempt to add any defendants or causes of action, or seek any additional relief. Neither did the newly proposed definition add any new issues to the case. The newly proposed definition altered the basis for inclusion in the class from the definition initially proposed by reflecting the intent to include all persons covered by the policies as opposed to only those individuals insured under the policies. Whether the newly proposed and certified definition may have increased the gross number of class members included, an increase in class members alone does not alter the essence or grounds for class certification or change the issues in the case. The trial court has the responsibility, after determining that a class exists and is susceptible to precise definition, to determine what the most appropriate definition is for the class and if certification is proper. The trial court exercised its discretion in identifying the common issues and adopting the newly proposed definition in curing the definitional defects of the initially proposed definition. The trial court could have formulated the newly proposed definition based on the record provided at the certification hearing. The fact that Bailey proposed the definition in its amended pleading therefore does not require the court to hold an additional certification hearing to provide Kemper with the opportunity to voice its opposition as long as Kemper received due process regarding the certification hearing.

Kemper had notice of the certification hearing and that the hearing would address the issue of certification. Kemper had notice of the essence of Bailey's claims and of the ultimate group of persons Bailey intended to represent. Kemper was put on notice of Bailey's intention to include all covered persons, and not just those insured under the policy, in the class before the certification hearing, although it was not reflected in the previously proposed definition. During Bailey's deposition, Bailey agreed that the class included "those persons who have had PIP claims with the Kemper Insurance Companies," which includes such covered persons. Kemper was also on notice that both the validity of any assignment received by Kemper and the timing of such receipt would be issues before the court. In fact, Kemper's main contention in opposition of the certification at the hearing was that the court would have to determine the merits of some of the issues in the case in order to determine the members of the class. In preparation for the hearing, Kemper prepared arguments specifically against the definition proposed in Bailey's petition. However, Kemper chose not to address the propriety of certifying the class defined without the terms Kemper argued created a fail-safe class. See Beeson, 22 S.W.3d at 403 (definition creating fail-safe class not permitted). Kemper had the opportunity to do so at the hearing and after the hearing, by submitting additional information to the court. By not addressing the effect of excluding the specific terms, Kemper assumed the risk of the court determining that Bailey had met its burden and that the evidence supported certifying the class, albeit defined differently than Bailey had suggested.

Therefore, the trial court did not deny Kemper due process or violate the Rule 42(c)(1) requirement that the trial court

hold a certification hearing. Whether the plaintiff has met the burden that certification was proper is determined on appeal by determining if the trial court abused its discretion in determining that the certified class met the requirements of Rule 42. This point is overruled.

**Class Definition–Overbroad**

██ Kemper contends the certified class is overly broad. Kemper argues that, by not limiting membership to those who did not validly assign benefits, the class includes claimless members. Kemper argues the class includes those who validly assigned benefits and those who did not assign benefits, but on whose behalf Kemper paid Medicare, which is not only legal, but mandatory regardless of the lack of assignment. *See Texas Farmers Ins. Co. v. Fruge*, 13 S.W.3d 509 (Tex.App.-Beaumont 2000, pet. denied).

██ A properly defined class is essential to the maintenance of a class action. *Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 453 (Tex.2000) (citing *Beeson*, 22 S.W.3d at 403). A proper class definition determines who is entitled to notice, who is entitled to relief, what relief can be awarded, and who will be bound by the judgment. *Sheldon*, 22 S.W.3d at 453. This means that class members must be ascertainable by reference to objective criteria. *Taylor*, 44 S.W.3d at 687. The definition "should not be defined by criteria that are subjective or that require an analysis of the merits of the case." *Beeson*, 22 S.W.3d at 403 (definition that requires finding of liability to identify members, a fail-safe class, is not permitted). Additionally, such class cannot be overly broad. *See McAllen Med. Ctr. v. Cortez, Inc.*, 66 S.W.3d 227 (Tex. 2001) (court's responsibility to protect absent plaintiffs from confusion or reliance on class action when court may alter class in the future) (citing *Sheldon*, 22 S.W.3d at 453). However, the fact that some class members may ultimately not prevail on their claims for money damages does not make them "claim-less" or transform their uniform interest in the declaratory relief into individual issues precluding class certification. *See Clements v. League of United Latin Am. Citizens*, 800 S.W.2d 948, 951 (Tex.App.-Corpus Christi 1990, no writ).

Determining membership in the class will require answering the following questions: What payments has Kemper made for personal injury protection benefits since February 1, 1996? Which of those benefit payments included a health care provider as a named payee on the draft? To whom or on whose behalf were such payments made? Reference to Kemper's records will determine the answer to all of these questions. Therefore, the members of the class are ascertainable by reference to objective criteria. None of these questions requires an analysis of the merits of the case. Answering these questions will determine who is entitled to notice. The class was certified only to adjudicate Bailey's claims for declaratory and injunctive relief. Therefore, answering the questions above will determine who will be entitled to relief. Furthermore, the class definition determines what relief can be awarded, to some extent. Because the class includes temporal limits, the declaratory relief that can be awarded will be restricted to interpreting the requirements of the insurance agreement and statutes in effect as of February 1, 1996. The definition also allows the court to address both what constitutes a valid assignment and when it must be received by Kemper in order for Kemper to include the health care provider as a joint or sole payee. Because the class was certified under Rule 42(b)(2), a mandatory class, answering these questions will determine who will be bound by the judgment.

The class definition certified by the court avoids inclusion of merit-based criteria that would create a fail-safe class and is broad enough to include all those, and only those individuals who have an interest in the court's interpretation of what constitutes a valid assignment and when it must be received by Kemper in order for Kemper to include the health care provider as a joint or sole payee for personal injury protection benefits as of February 1, 1996. The trial court did not abuse its discretion in determining that an identifiable class existed with regard to the claims for declaratory and injunctive relief and that it was susceptible to precise definition. Nor did the trial court abuse its discretion in determining that the class definition certified was permissible. Thus, the class definition itself is not fatal to the class certification. This point is overruled.

**Trial Plan**

Kemper contends the trial plan presented in the trial court's certification order is insufficient because it does not identify the causes of action certified and does not address how liability and damages will be determined regarding each defendant and member of the class.

The trial court, in its order certifying plaintiff class, specified the causes of action for which the class was certified. "[T]he Court hereby confers class action status to the proceeding initiated by CARL BAILEY against KEMPER ... for purposes of adjudicating Plaintiff's claims of declaratory and injunctive relief." The trial court's order goes on to say:

> [I]t is likely that the central, common issues in this case may be determined through Motions for Summary Judgment. Following certification, the Court will determine the rights of the parties under the contracts at issue as discussed above. The Court will then entertain Motions for Summary Judgment on the

issues of waiver, and the scope of relief available under Articles 5.06–3 and 21.55, Tex. Ins.Code. To the extent individual questions remain after determination of the common issues, the Court finds that their disposition will not render the case unmanageable.

The court in *Bernal* stated that "it is improper to certify a class without knowing how the claims can and will likely be tried," and required that a court's certification order indicate how claims will be tried so that compliance with the requirements of class certification can be meaningfully evaluated. *Southwestern Refining Co. v. Bernal,* 22 S.W.3d 425, 435–36 (Tex.2000). The certification order should identify the causes of action, how those causes of action would be tried, how liability for each defendant would be determined, and how damages for each of the plaintiffs would be determined. *W. Teleservices, Inc. v. Carney,* 37 S.W.3d 36, 41 (Tex.App.-San Antonio 2000, no pet.). The trial plan must indicate a method to resolving individual issues. *Nissan Motor Co. v. Fry,* 27 S.W.3d 573, 592 (Tex.App.-Corpus Christi 2000, pet. denied). However, a detailed trial plan is not required in every class action case and may not be necessary for every class certification, for example, where plaintiff's claims stem from identical contractual language and a uniform pattern of misconduct. *State Farm Mut. Auto. Ins. Co. v. Lopez,* 68 S.W.3d 701, 702 (Tex.App.-Corpus Christi 2001, no pet. h.).

The "rigorous analysis" required by *Bernal* is set in the context of analyzing whether the predominance requirement of Texas Rule of Civil Procedure 42(b)(4) was met. *Bernal,* 22 S.W.3d at 435. To the extent that trial courts are required to conduct a rigorous analysis of the requirements under other provisions of Rule 42 and include a trial plan in the order certifying a class under other provisions of

Rule 42(b), the trial court's order is sufficient. This point is overruled.

**Commonality**

Kemper contends there are no issues of law or fact that are common to all class members.

■ The movant must establish that there are questions of law or fact common to the class. Tex.R. Civ. P. 42(a). Questions common to a class are those which when answered as to one class member are answered as to all class members. *Chevron U.S.A., Inc. v. Kennedy*, 808 S.W.2d 159, 162 (Tex.App.-El Paso 1991, writ dism'd w.o.j.). Commonality does not require that all questions of law and fact must be identical, but only that an issue of law or fact exists that inheres in the complaints of all class members. *Microsoft Corp. v. Manning*, 914 S.W.2d 602, 611 (Tex.App.-Texarkana 1995, writ dism'd). A single question could provide adequate grounds for a class action. *Wente v. Georgia-Pacific Corp.*, 712 S.W.2d 253, 255 (Tex.App.-Austin 1986, no writ). The trial court must identify the substantive issues controlling the outcome of the litigation, not to weigh the substantive merits of each class member's claims, but to determine whether the character and nature of the case satisfy the commonality requirement. *Sun Coast Res., Inc. v. Cooper*, 967 S.W.2d 525, 533 (Tex.App.-Houston [1st Dist.] 1998, pet. dism'd w.o.j.).

■ In the order certifying the class, the trial court identified common legal issues. The court found that all members of the class seek both a ruling that Kemper must receive an assignment of benefits before issuing a personal injury protection benefit check naming a health care provider as a sole or additional payee and a determination as to the form the assignment must take in order to comply with the terms of the policy. All members assert that Kemper has waived as a matter of law its rights to audit the claims already paid for purposes of assessing coverage and the reasonableness and necessity of charges incurred. All members seek a finding that the date the claims were actually paid establishes the date on which they were due for purposes of Articles 5.06-3 and 21.55 of the Texas Insurance Code.

The issues are limited to determining what the rights of the parties are under the Texas Insurance Code and the language of the insurance policy. A declaratory judgment as to these issues would not address issues of federal preemption, or determine liability or monetary damages. Although Kemper has indicated that there may be at least two subgroups of members, those for whom Kemper had not received an assignment prior to issuing payment and those for whom Kemper had received some writing Kemper interpreted as an assignment before issuing payment. If the issue is framed as whether Kemper must receive an assignment of benefits in a form that complies with the terms of the policy before issuing benefit payments, the issue is common to both subgroups. The trial court did not abuse its discretion in determining that common issues existed. This point is overruled.

**Typicality**

Kemper contends that Bailey's claims are not typical of those of the class because Kemper has a defense peculiar to Bailey that destroys the typicality of the class.

■ The typicality requirement generally mandates that the class representative possess the same interests and suffer the same injuries as the class. *Fry*, 27 S.W.3d 573; *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). The typicality requirement is satisfied when

the evidence establishes that the class representative's claims have the same essential characteristics as those of the class as a whole. *Manning,* 914 S.W.2d at 613; *Glassell v. Ellis,* 956 S.W.2d 676, 685 (Tex. App.-Texarkana 1997, pet dism'd w.o.j.). The injuries suffered need not be identical, but there must be a nexus between the injuries suffered by the representative and those suffered by the other members of the class. *State Farm Mut. Auto. Ins. Co. v. Lopez,* 45 S.W.3d 182, 191 (Tex.App.-Corpus Christi 2001, pet. filed). The claims must arise from the same event or course of conduct giving rise to the claims of other class members and must also be based on the same legal theories. *Id.* at 191; *Stromboe,* 28 S.W.3d at 210; *Manning,* 914 S.W.2d at 613. The presence of an "arguable defense unique to the named plaintiff" properly negates typicality only when "it is predictable" that such defense will become a "major focus of the litigation," *Koos v. First Nat'l Bank,* 496 F.2d 1162, 1164 (7th Cir.1974), such that the named plaintiff "will become distracted by the presence of a possible defense ... that the representation of the rest of the class will suffer," *J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.,* 628 F.2d 994, 999 (7th Cir.1980).

Kemper argues that an actual assignment of benefits is a defense to liability for having paid PIP benefits to a health care provider without first receiving an assignment. Although Kemper may have unique defenses to liability regarding each member of the class, the class is not certified to determine any liability. Therefore, it is not predictable that these defenses will become a major focus of the class-action proceedings, as the class is currently certified.

Because the language of the insurance agreement and statutes are the same for all members of the class, the language will have one meaning which applies to all members of the class. Bailey's claims arise out of the same course of conduct that affects the other members of the class, Kemper's interpretation of the insurance agreement. Such interpretation provides the nexus between the injuries suffered by Bailey and those suffered by the other members of the class regarding Kemper's conduct pursuant to this provision of the insurance agreement. Bailey raises both the timeliness of the receipt of an assignment in relation to payment of benefits and the adequacy of the form of the assignment to cover the requested health care provider charges. Although the particular facts of each member's case may differ, Bailey's concerns of timeliness and adequacy are typical concerns shared by the class. The trial court did not abuse its discretion in finding that Bailey's claims for declaratory relief are typical of the other members of the class. This point is overruled.

**Fair and Adequate Representation**

Kemper contends the trial court abused its discretion in finding that Bailey and his counsel will fairly and adequately protect the interest of the class. Kemper argues that Bailey did not establish his familiarity with the basic issues including composition of the class and the damages sought.

Adequacy of representation is a question of fact and must be determined based on the individual circumstances of the case. *Forsyth v. Lake LBJ Inv. Corp.,* 903 S.W.2d 146, 150 (Tex.App.-Austin 1995, writ dism'd w.o.j.). Among the factors affecting the adequacy determination are (1) adequacy of counsel, (2) potential for conflicts of interest, (3) personal integrity of the plaintiffs, (4) whether the class is unmanageable because of geographical limitations, (5) whether the plaintiffs can afford to finance the class action, (6) the representative's familiarity with the litiga-

tion and belief in the legitimacy of the grievance, and (7) the representative's willingness and ability to take an active role in and control the litigation, and to protect the interests of the other class members. *Id.; Glassell*, 956 S.W.2d at 682. Regarding familiarity, a class representative should be familiar with the basic issues, including composition of the class and damages sought. *See Manning*, 914 S.W.2d at 615.

 Kemper argues that because the definition of the class was expanded after the certification hearing, it was impossible for Bailey to establish his familiarity with the composition of the class. However, as mentioned above, the court was not confined to the class definition proposed in the original petition. If there were sufficient materials to convince the court that Bailey was familiar with the composition of the class, even if the proposed definition was not the best way to define the appropriate class, then the court did not abuse its discretion in determining that Bailey was familiar with the composition of the class he sought to represent.

Bailey stated in his deposition that if an assignment was received by Kemper before Kemper issued payment, the covered person would not be included in the class. However, Bailey later stated that the validity of the assignment would need to be addressed by the court. Although Bailey never explicitly provided either the proposed or certified definition, when asked specific questions about who would be included in the class, under specific scenarios, his answers were consistent with the composition of the certified class. Bailey demonstrated his familiarity with the class he sought to represent.

 Kemper also argues that Bailey was not familiar with the damages he sought to recover on behalf of the class. At no time did Bailey include declaratory or injunctive relief when asked what relief he sought on behalf of the class. While the declaratory judgment would provide a form of relief, alone it would not provide damages, but might provide the contractual and statutory interpretation necessary for the members of the class to recover the damages sought. It is reasonable for the court to find Bailey familiar with the damages sought on behalf of the class without Bailey having mentioned declaratory relief. At the hearing, Bailey stated, "The penalties and interest should go to the people that are in our class, and obviously attorney's fees." In his deposition, Bailey referred to multiple penalties, but only one statute, the PIP statute. While the representative should be familiar with the basic issues including damages sought, there is no requirement that the representative be familiar with the specific statutes under which such damages are sought. Although Bailey stated in his deposition that he was unsure whether he was seeking return of the PIP benefits paid to the health care providers, in context, his uncertainty arose from his interpretation of the defendant's questions, that Kemper thought he should be seeking to recover the PIP payments that were made. At one point he stated, "If Kemper believes we should, I guess, we would." This indicates his understanding that he had not been seeking the PIP payments on behalf of the class along with his willingness to do so if it was necessary to "make sure it is done right." The trial court did not abuse its discretion in determining that Bailey was an adequate representative for the certified class. This point is overruled.

### 42(b)(2)—Acting or Refusing to Act on Grounds Applicable to the Class

 Kemper contends the trial court abused its discretion in finding that Kemper acted or refused to act on grounds

generally applicable to the entire class and that injunctive and declaratory relief is appropriate to the class as a whole.

Texas Rule of Civil Procedure 42(b)(2) provides for class certification when, in addition to the requirements of Rule 42(a), the movant establishes that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole...." The framers of the federal rule, from which the Texas rule is drawn, intended (b)(2) to "reach situations where a party has taken action or refused to take action with respect to a class and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate." FED. R.CIV.P. 23 (advisory committee notes).

Bailey argues that by definition every member of the class will have been subjected to the identical conduct of issuance of a joint or direct payment based on Kemper's interpretation of the language of the standard Texas automobile liability insurance policy and Article 5.06–3 of the Texas Insurance Code. Kemper maintains that neither the policy nor the law requires it to issue personal injury protection benefits solely to the claimants unless and until it receives a signed assignment of benefits in favor of the provider. Kemper interprets the policy to say only that Kemper must receive an assignment without any reference as to when the assignment must be received.

The trial court concluded that in failing to "institute and maintain a policy requiring that an assignment be received before any joint or direct payments were issued" Kemper had "acted and refused to act on grounds generally applicable to the entire class." Bailey argues that all members of the class have been subjected to the identical conduct for the identical reason, because they have all by definition been persons to whom or on whose behalf Kemper issued a joint or direct payment. Although the issues of liability and damages may be different for the individual members of the class, with some members possibly suffering no injury at all because Kemper's interpretation of the contract provisions did not produce an incorrect result, the court did not abuse its discretion in determining that Kemper had acted or refused to act on grounds applicable to the class. This point is overruled.

### Declaratory Relief Predominating the Monetary Relief Sought

▉ Kemper contends that the trial court abused its discretion in finding that the monetary relief requested did not predominate over the declaratory relief. Kemper argues that because Bailey sought both a declaration of the rights of all class members under the insurance policy and Articles 5.06–3 and 21.55 of the Texas Insurance Code and also seeks damages pursuant to those articles, as well as attorney's fees and interest, and because removal of the request for a declaratory relief would not impact the substance of the cause of action or change the effect of the court's finding, the declaratory relief sought is superfluous and therefore does not predominate.

▉ Cases interpreting Texas Rule of Civil Procedure 42(b)(2) require the court to find the declaratory relief sought must predominate the monetary relief sought. *TCI Cablevision v. Owens*, 8 S.W.3d 837, 847 (Tex.App.-Beaumont 2000, pet. dism'd by agr.). Claims for monetary relief "predominate unless they are incidental to related claims for injunctive or declaratory relief. Incidental damages are damages that flow directly from liability to the class as a whole on claims forming the

basis of the injunctive or declaratory relief." *Id.; Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 425 (5th Cir.1998).

The trial court did not certify this class regarding either the statutory penalties or the causes of action that would give rise to the statutory penalties.[1] The declaratory judgment sought by Bailey would not establish Kemper's liability to the class as a whole. Looking only at Bailey's request for declaratory and injunctive relief, we cannot say that the trial court abused its discretion in determining that the declaratory judgment predominates over any monetary relief sought. This point is overruled.

### Failure to Certify Under 42(b)(4)

Bailey contends the trial court erred in failing to find that common issues of law and fact predominate over questions affecting only individual members, thus denying certification under Rule 42(b)(4).

Texas Rule of Civil Procedure 42(b)(4) provides that

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: ... the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Bailey challenges only the trial court's failure to make a determination that common issues of law and fact predominate over individual issues. Even if the trial court abused its discretion in failing to find that common issues predominate over individual ones, because the trial court did not include a statement in the order of certification finding that a class action is superior to other available methods for the fair and efficient adjudication of the controversy, the court may have based its decision on a finding that a class action was not superior to other methods of adjudication. Bailey does not challenge the trial court's

---

1. Although the trial court's certification order states that "[T]he Court finds that the requested statutory penalties flow automatically and incidentally from the rights established by the requested declaratory judgment and do not predominate," this finding is superfluous to the order because the class was not certified for monetary relief nor the causes of action that would allow for such recovery: negligence, breach of contract, violation of statute. Furthermore, the finding is erroneous because a declaration regarding what the terms of the contract require does not determine that the contract was breached as to all members of the class. Such a declaration does not establish that a statute was violated, a required finding to recover the eighteen percent statutory penalty under TEX. INS.CODE ANN. art, 21.55, § 6 (Vernon Supp.2002). Such a declaration also does not establish that an insurer failed to pay certain benefits when due, which is required in order to recover the twelve percent statutory penalty under TEX. INS.CODE ANN. art. 5.06–3(3). That provision also requires that the insurer be required to pay such benefits as the insurer failed to pay when due and for which the person entitled to such benefits brought an action in contract to recover the same. *See* TEX. INS.CODE ANN. art. 5.06–3(3) (Vernon Supp.2002). In short, the declaratory relief would not relieve the Plaintiffs from proving, outside the purview of the certified class action, their individual causes of breach of contract and violation of statute in order to recover the statutory penalties.

failure to find that a class action is superior to other methods of adjudication. Therefore, Bailey waives any error in the court's failure to make such a finding. We cannot conclude that the court abused its discretion in declining to certify the class under Rule 42(b)(4). This point of error is overruled.

The judgment is affirmed.