ACCEPTED
06-14-00106-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
2/17/2015 1:24:11 PM
DEBBIE AUTREY
CLERK

NO. 06-14-00106-CV

IN THE SIXTH COURT OF APPEALS
TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
2/17/2015 2:01:00 PM
DEBBIE AUTREY
Clerk

PETER G. MILNE, INDIVIDUALLY, PETER G. MILNE P.C., & HEADY, MILNE & ASSOCIATES, P.C.

*Appellants*

v.

VAL RYAN & JOY RYAN

*Appellees*

Appeal from the 4th Judicial District Court
Rusk County, Texas

**ORAL ARGUMENT REQUESTED**

BRIEF FOR APPELLANTS

J. CHAD PARKER
Cparker@theparkerfirm.net
Bar Card No: 15489000
FORREST F. MAYS
Fmays@theparkerfirm.net
Bar Card No: 24072228
THE PARKER FIRM, P.C.
3808 Old Jacksonville Rd.
Tyler, Texas 75701
(903) 595-4541 - telephone
(903) 595-2864 - facsimile

Attorneys for Appellants Peter G. Milne,
Ind., Peter G. Milne, P.C.,

PETER G. MILNE
Pmilne@tylertaxlaw.com
Bar Card No. 24037118
327 W. Houston St.
Tyler, Texas 75702
903-593-9300 - telephone
903-593-9325 - facsimile
Attorneys for Appellant Milne &
Associates, P.C.

## IDENTITY OF PARTIES AND COUNSEL

**Appellants/Defendants**

Peter G. Milne, Individually
Peter G. Milne, P.C.
Healy, Milne & Associates, P.C.

**Counsel for Appellants**

**J. CHAD PARKER**
Bar Card No: 15489000
**FORREST F. MAYS**
Bar Card No: 24072228
THE PARKER FIRM, P.C.
3808 Old Jacksonville Rd.
Tyler, Texas 75701

Attorneys for Appellants Peter G. Milne, Ind., & Peter G. Milne, P.C.,

**PETER G. MILNE**
Bar Card No. 24037118
327 W. Houston St.
Tyler, Texas 75702

Attorneys for Appellant Healy, Milne & Associates, P.C.

**Appellees/Plaintiff**

Val Ryan
Joy Ryan

**Counsel for Appellees**

James A. Holmes
State Bar No. 00784290
212 South Marshall
Henderson, Texas 75654

## TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ................................................................. ii

INDEX OF AUTHORITIES ........................................................................ v-vi

STATEMENT OF THE CASE ........................................................................ ... vii

ISSUES PRESENTED ........................................................................ viii

1.      Did the district court err by failing to meet the clearly-ascertainable requirement in its class definition contrary to *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 403 (Tex. 2000)?

2.      Did the district court err by certifying claims of unconsionability under the Texas Deceptive Trade Practices Act against the Hicks Defendants in violation of Tex. R. Civ. P. 42(a)(2) and 42(b)(3) because individualized inquiries into whether such actions took advantage of the lack of knowledge, ability, experience or capacity of class members are imperative and cannot be resolved by only looking to Appellees claims?

3.      Did the district court err by certifying claims of unconscionability and breach of fiduciary duty against the Hicks Defendants where they are not typical of Appellees claims?

4.      Did the district court err in certifying claims for declaratory judgment against Appellants where the proposed claims for class-wide relief relate exclusively or predominately to money damages in violation of Tex. R. Civ. P. 42(b)(2).

STATEMENT OF FACTS ........................................................................ 1–4

A.      The Appellees Claims ........................................................................1–2

B.      The Hicks Defendants, the 2001 Permanent Injunction,
        and relationship with Appellants ........................................................................2-3

C.      Proceedings in the district court ........................................................................3-4

SUMMARY OF THE ARGUMENT ........................................................................5–6

STANDARD OF REVIEW ................................................................ 6–7

ARGUMENT.............................................................................7-17

I.      The district court erred in its class definition and violated the clearly-
        ascertainable requirement of a class definition ......................................7–10

II.     The district court erred by certifying claims of unconscionability against the
        Hicks Defendants because common issues of law and fact do not
        predominate ......................................................................10-14

III.    The district court erred by certifying claims of unconscionability
        and breach of fiduciary duty against the Hicks Defendant because
        they are not typical of Appellees claims ......................................15

IV.     The district court erred in certifying claims for declaratory judgment
        against Appellants  in violation of Tex. R. Civ. P. 42(b)(2) because the
        proposed claims for class-wide relief relate exclusively or predominately to
        money  damages ..................................................................16-17

CONCLUSION AND PRAYER ....................................................................17

CERTIFICATE OF COMPLIANCE WITH RULE 9.4(E) ...................................................18

CERTIFICATE OF SERVICE ....................................................................19

# INDEX OF AUTHORITIES

**Cases**

*Allison v. Citgo Petroleum Corp.*,
151 S.W.3d 402, 425 (5th Cir. 1998) ......................................................6, 16

*Bailey v. Kemper Casualty Ins. Co.*,
83 S.W.3d 840, 847  (Tex. App. – Texarkana 2002, pet dism'd w.o.j**)** ....6, 7

*Bolin v. Sears, Roebuck & Co.*,
231 F.3d 970, 978 (5th Cir. 2000) ...........................................................16

*Dafforn v. Rousseau Assocs., Inc.*,
1976–2 Trade Cases ¶ 61, at 219 (N.D. Ind.1976) .....................................10

*East Texas Motor Freight v. Rodriguez*,
431 U.S. 395, 403 (1977) ...................................................................... 15

*Entex v. City of Pearland*,
990 S.W.2d 904, 909 (Tex. App.–Houston [14th Dist.] 1999, no pet.) ......7

*Forsyth v. Lake LBJ Inv. Corp.*,
903 S.W.2d 146, 149 (Tex. App.– Austin 1995, writ dism'd w.o.j.) ...........7

*Gilchrist v. Bolger*,
89 F.R.D. 402, 406 (S.D.Ga.1981) ...........................................................15

*Henry Schein, Inc. v. Stromboe*,
28 S.W.3d 196, 200–01 (Tex. App.– Austin 2000, pet. dism'd w.o.j.)...6, 13

*Hi–Lo Auto Supply, L.P. v. Beresky*,
986 S.W.2d 382, 386 (Tex. App.–Beaumont 1999, no pet.) .....................6

*Intratex Gas Co. v. Beeson*,
22 S.W.3d 398, 403 (Tex. 2000) .......................................................vi, 5, 9

*Pellman v. Cinerama, Inc.*,
     89 F.R.D. 386, 389 (S.D.N.Y.1981) ............................................................15

*Peltier Enterprises, Inc. v. Hilton*,
     51 S.W.3d 616, 623–24 (Tex. App. – Tyler 2000, pet. denied)................5, 12

*Southwest Refining Co. v. Bernal*,
     22 S.W.3d 425, 433 (Tex. 2000) ................................................................11

*Spera v. Fleming, Hovenkamp & Grayson, P.C.*,
     4 S.W.3d 805, 810 (Tex. App.—Houston 1999, no pet .) ...........................11

*Texas S. Rentals, Inc. v. Gomez*,
     267 S.W.3d 228, 244 (Tex. App. – Beaumont 2008, no pet.).......................5

*Wente v. Georgia Pacific Corp.*,
     712 S.W.2d 253, 257 (Tex. App.—Austin 1986, no writ) .......................... 11

## Statutes

Tex. Bus. & Com. Code Ann. § 17.45(5) (Vernon Supp.1998) .............................12

## Rules

Tex. R. Civ. P. 42 ........................................................................ vi, 6, 11, 15–17

## STATEMENT OF THE CASE

| | |
|---|---|
| *Nature of the case* | Val & Joy Ryan ("Appellees") sued Defendants Richard Hicks, Individually and d/b/a Elder Advisory Services and Elder Advisory Tax Group, LLC ("Hicks Defendants"), Appellants, and others for numerous causes of action arising from Hicks' provision of legal services and/or Medicaid planning services purportedly in violation of a 2001 injunction from the 114th District Court, Smith County. Hicks was an independent contractor of Appellants Peter G. Milne, P.C. and Healy, Milne & Associates, P.C. over the period of 2005 to 2012. (4RR: 9, 11, 14.) Appellees sought certification of approximately 450-575 members on claims of unconscionability under the Texas DTPA, breach of fiduciary duty, declaratory relief, and vicarious liability under theories of partnership, joint enterprise, and civil conspiracy. (2CR: 278–309; 6RR: 23–24.) |
| *Trial court* | 4th Judicial District Court, Rusk County<br>Honorable Clay Gossett |
| *Trial court's disposition* | Entered Order of Class Certification that Granted Appellees' Motion and Supplemental Motions for Class Certification as to claims of unconscionability and breach of fiduciary duty against Hicks Defendants, granted as to Appellees' claims for declaratory relief and vicarious liability under theories of partnership, joint enterprise, and civil conspiracy against Appellants, and denied as to Appellees' claims for unconscionability and breach of fiduciary duty against Appellants (3CR: 526.) |

# ISSUES PRESENTED

1.  Did the district court err by failing to meet the clearly-ascertainable requirement in its class definition contrary to *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 403 (Tex. 2000)?

2.  Did the district court err by certifying claims of unconsionability under the Texas Deceptive Trade Practices Act against Richard Hicks in violation of Tex. R. Civ. P. 42(a)(2) and 42(b)(3) because individualized inquiries into whether such actions took advantage of the lack of knowledge, ability, experience or capacity of class members are imperative and cannot be resolved by only looking to Appellees claims?

3.  Did the district court err by certifying claims of unconscionability and breach of fiduciary duty against the Hicks Defendants where they are not typical of Appellees claims?

4.  Did the district court err in certifying claims for declaratory judgment against Appellants where the proposed claims for class-wide relief relate exclusively or predominately to money damages in violation of Tex. R. Civ. P. 42(b)(2).

## STATEMENT OF FACTS

### A. The Appellees Claims

Appellees Val & Joy Ryan moved Val's parents from Louisiana to Autumn Leaves Nursing Home in Henderson around November 2007. (6RR: 28-29.) The Ryans spoke with Raymond Pyle, a social worker at Autumn Leaves, about Val's parents' financial situation and Mr. Pyle furnished the Ryans with Richard Hicks telephone number. (*Id*. at 29.) The Ryans called and made an appointment with Hicks at his office in Tyler. (*Id*.) According to Mr. Ryan, Hicks notified the Ryans that they needed to "stay away from the government, you don't need the government to pay for anything, you need to try to do this on your own."(*Id*.) Ryan testified that Hicks encouraged them to invest in National Note of Utah to help finance their parents' nursing home expenses. (*Id*.) Ryan testified that the he and his wife went home to think about it and then decided they wished to invest and called Hicks back to make another appointment. (*Id*. at 29–30.) Hicks did not charge the Ryans anything for his services related to the investment but did ask the Ryans whether they and their parents were in need of various legal documents that could be drafted for them. (*Id*. at 30.) They said they were and obliged his services for a fee of $3,000.00 which they paid to Elder Advisory Services. (*Id* at 30–31, 38; 8RR: PX1H.) Ryan testified that during these meetings, he heard the name Peter Milne referenced and was presented with brochures and business cards bearing his name. (*Id*. at 31; 8RR: PX1C–PX1E.)

Ryan testified that once the documents were drafted, Hicks personally delivered them to him and his parents at Autumn Leaves. (6RR: 36–38.)

Ryan testified that he did not receive any Medicaid advice from Hicks other than that Medicaid was not proper for their situation and they should pursue private pay for their parents' nursing home expenses. (6RR: 50.) Ryan testified that Hicks represented to them that he was not a lawyer. (*Id.* at 51.) Ryan stated that he felt that if it was necessary for them to meet Milne, that Hicks would have introduced them and that they did not feel it was necessary to "check out his story" because Hicks had a nice office. (*Id.*)

**B.** **The Hicks Defendants, the 2001 Permanent Injunction, and relationship with Appellants**

Hicks testified that he negotiated with the Texas Unauthorized Practice of Law Committee in 2001 and entered an agreed injunction in the 114th District Court of Smith County on the grounds that the Committee determined that providing Medicaid planning services was considered the practice of law. (4RR: 10.) Hicks stated that, after the injunction was entered, he changed the way he performed his services by working in direct relationship with a law firm. (*Id.*) Appellant Peter G. Milne, P.C. was formed in 2005. (3CR: 510.) Peter G. Milne, P.C. dissolved in 2007 and Healy, Milne & Associates, P.C. was formed and operated from October 2006 until July 2010. (*Id.*) Peter G. Milne, P.C. was reinstated in 2010. (*Id.*) Hicks testified that he and Milne entered an oral agreement whereby Milne would "assist me in cases where

we were assisting individuals with Medicaid planning once they were placed into a nursing facility." (4RR: 7.) For cases in which client intake originated with Hicks' office, Hicks testified that he would obtain 75% and Appellants would receive 25% of the fee. (4RR: 16.) For cases in which client intake originated with Milne's office, Hicks would obtain 60% of the fee and Appellants would obtain 40%. Hicks was an independent contractor of Appellants Peter G. Milne, P.C. and Healy, Milne & Associates, P.C. over the period of 2005 to 2012. (4 RR 9, 11, 14.)

## C.     Proceedings in the district court

Appellees' live pleading is their Fifth Amended Petition and they have filed a Motion and three supplemental motions for Class Certification. (1CR: 144, 106, 162, 2CR: 261, 3CR: 316.)  Through those Motions they have sought certification of the claims of unconscionability under the DTPA and breach of fiduciary duty against the Hicks Defendants and Appellants, certification of theories of vicarious liability through partnership, joint enterprise, and civil conspiracy, and a declaratory judgment that Appellants were in violation of the 2001 injunction rendered against the Hicks Defendants. Two hearings were held on the class certification motions. (5 RR, 6 RR.) Appellees constructed a Master Exhibit List containing all people believed to constitute potential members of the proposed Class. (2CR: 278–309.)

Hicks served Amended Answers to Interrogatories on August 30, 2014, in which he claimed that all of the services he provided to those on the Master Exhibit

List were enjoined services pursuant to the terms of the 2001 Permanent Injunction. (2CR: 273.) Appellees supplemented their Class Certification Motion to alert the district court of these developments. (2CR: 261.) However, of those on the Master Exhibit List, 114 are what have been termed "acknowledged clients" to whom Hicks and Appellants provided services jointly and in which both partook of the fee. (3CR: 392.) Another group containing 219 clients are "small case" clients whom Hicks never disclosed to Appellants and for which Hicks retained the entire fee. (3CR: 392–393.) Another group containing approximately 127 people are "simple case" clients whom Hicks alleges were made known by Milne but whom Milne authorized Hicks to perform services that involved the practice of law and that he told Hicks he could retain the entire fee. (3CR: 393.)

The Court entered its Order on Class Certification on November 26, 2014. (3CR: 526.)

## SUMMARY OF THE ARGUMENT

The district court erred by violating the clearly-ascertainable requirement of a class definition by framing the class definition as a legal conclusion; i.e. the class encompasses those who paid a fee for "enjoined services" performed by Richard Hicks since January 1, 2005. This definition necessarily requires a determination on the merits before the court can ensure the existence of a class which renders it impossible to define at least a portion of the class until ultimate liability as to that person is made. This violates *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 403 (Tex. 2000).

The district court erred by certifying claims of unconscionability against the Hicks Defendants because common issues of law and fact do not predominate with respect to the third and fourth elements of the unconcionability claims – whether the Hicks Defendants' actions took advantage of the lack of knowledge, ability, experience, or capacity of the proposed Class to a grossly unfair degree. Such an answer as to Appellees does not answer the question for the approximately 450-575 people that have been proposed as members of the Class and precludes certification. *See Peltier Enterprises, Inc. v. Hilton*, 51 S.W.3d 616, 623–24 (Tex. App. – Tyler 2000, pet. denied); *Texas S. Rentals, Inc. v. Gomez*, 267 S.W.3d 228, 244 (Tex. App. – Beaumont 2008, no pet.).

The district court erred in certifying claims for unconscionable conduct and

breach of fiduciary duty against the Hicks Defendants because Appellees' claims are not typical of the proposed Class.

The district court erred in certifying claims for declaratory judgment against Appellants in violation of Tex. R. Civ. P. 42(b)(2) because the proposed claims for class-wide relief relate exclusively or predominately to money damages. *See Allison v. Citgo Petroleum Corp.*, 151 S.W.3d 402, 425 (5th Cir. 1998).

## STANDARD OF REVIEW

An appellate court reviews the decision of the trial court in certifying or refusing to certify the class for abuse of discretion. *Bailey v. Kemper Casualty Ins. Co.*, 83 S.W.3d 840, 847 (Tex. App. – Texarkana 2002, pet dism'd w.o.j)(citing *Hi–Lo Auto Supply, L.P. v. Beresky*, 986 S.W.2d 382, 386 (Tex.App.-Beaumont 1999, no pet.)). A trial court abuses its discretion only if it "fails to properly apply the law to the undisputed facts or acts arbitrarily, unreasonably, or without reference to any guiding principles." *Bailey*, 83 S.W.3d at 847 (citing *Henry Schein, Inc. v. Stromboe*, 28 S.W.3d 196, 200–01 (Tex.App.-Austin 2000, pet. dism'd w.o.j.)). In conducting this review, the court must view the evidence in the light most favorable to, and indulge every presumption in favor of, the trial court's action. *Bailey*, 83 S.W.3d at 847 (citing *Entex v. City of Pearland*, 990 S.W.2d 904, 909 (Tex.App.-Houston [14th Dist.] 1999, no pet.)). An appellate court may not substitute its judgment for that of

the trial court, even if it would determine the issues differently than the trial court. *Bailey*, 83 S.W.3d at 847 (citing *Forsyth v. Lake LBJ Inv. Corp.*, 903 S.W.2d 146, 149 (Tex.App.-Austin 1995, writ dism'd w.o.j.)).

## ARGUMENT

**I.     The district court erred in its class definition and violated the clearly-ascertainable requirement of a class definition**

The district court's Order on Class Certification states that Appellees and their attorney are appointed to represent a class consisting of "All individuals and entities who/which paid a fee for enjoined services performed by Richard Hicks since January 1, 2005." For purposes of this suit, "enjoined services" means any of the services listed in the 2001 injunction entered against **HICKS** by the 114 Judicial District Court of Smith County, Texas. [sic] (4CR: 527.) In listing the issues of law and fact common to the class, the Court included among them: " 7. Whether the 2001 injunction requires that Hicks be an "employee" of a lawyer or law firm in order to provide the enjoined services." (4CR: 530.) The Court goes on to state that "The Court finds that because Hicks' violations of the 2001 injunction are uncontested and have been admitted in open Court, the Court and the parties will concentrate the bulk of their efforts on the following issues: . . . 1. Whether the law firms' admitted failure to "employ" Hicks violated the terms of the 2001 injunction . . . 4. Whether Plaintiffs

are entitled to declaratory judgment that Defendants violated the 2001 injunction." (4CR: 530 – 531.)

The class is not clearly-ascertainable because the definition of "enjoined services" under the 2001 injunction necessarily requires a determination on the merits before at least a portion of the class meets the definition. Approximately 114 of the proposed members of the Class belong to a group consisting of clients for whom the Hicks Defendants and Appellants provided services jointly over the time duration that the definition encompasses – the so-called "acknowledged clients". (2CR: 175-179; 5RR: 19–20, 28–31.) For that group, a determination on the merits on three separate issues must be resolved by the Court before the class is properly defined:

(1)    Whether  Appellants are bound by the 2001 injunction either by virtue of participating in the 2001 proceedings or being a real party in interest when the injunction was rendered. (4CR: 477–478, 503–504);

(2)    Whether the Court may interpret the 2001 injunction of the 114th Judicial District Court. (4CR: 476, 502); and

(3)    If "yes" to Nos. 1 & 2, whether the 2001 Injunction required Hicks to be an "employee" of Appellant law firms to not be in violation of the Injunction. (8RR: 226–229)

For a class definition to be objective and its members presently ascertainable, the definition cannot require a determination of the merits. Deciding the merits of the

suit in order to determine the scope of the class or its maintainability as a class action is not appropriate. *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 404 (Tex. 2000). A proposed class definition that rests on the paramount liability question cannot be objective, nor can the class members be presently ascertained; when the class definition is framed as a legal conclusion, the trial court has no way of ascertaining whether a given person is a member of the class until a determination of ultimate liability as to that person is made. *Id.* A fail-safe class that is based on resolving the ultimate liability issue is bound only by a judgment favorable to plaintiffs but not by a judgment favorable to defendants. *Id.* at 404–05. Certifying a fail-safe class inevitably creates one-sided results. If the defendant is found liable, class membership is then ascertainable and the litigation comes to an end. A determination that the defendant is not liable, however, obviates the class, thereby precluding the proposed class members from being bound by the judgment. The Texas Supreme Court does not support such a result when "[r]ule [42] was never meant to be an exception to the rules of res judicata or to provide a risk-free method of litigation." *Id.* at 405 (quoting *Dafforn v. Rousseau Assocs., Inc.*, 1976–2 Trade Cases ¶ 61, at 219 (N.D. Ind.1976)). While the trial court possesses significant discretion to modify the class definition or even decertify the class as the case develops, the trial court must still certify only those classes that are sufficiently defined and meet the Rule 42 requirements. *Beeson*, 22 S.W.3d at 405.

Because a determination on the merits will be required to see whether "enjoined services" were provided to members of the Class, the class is not presently ascertainable and a fail-safe class has been constructed. What is particularly damaging to Appellants about this fail-safe definition is that, even were these issues to be resolved as a matter of law in their favor, the proposed Class would not be bound by the judgment because they were not ascertainable when the Class was certified and Appellants cannot rely on res judicata to prevent subsequent litigation.

Because the class definition in this case is not precise, and its members cannot be ascertained until the alleged ultimate liability issue is decided, the district court abused its discretion when it certified the class. *Id*. at 405.

## II. The district court erred by certifying claims of unconscionability against the Hicks Defendants because common issues of law and fact do not predominate

The district court's Order on Class Certification granted Appellees' Motion for Class Certification as to their claims for unconscionable conduct. (4CR: 526.) The Order defined the inquiry into unconscionable conduct as "whether the defendant committed an act or practice that, to a consumer's detriment, took advantage of his lack of knowledge, ability experience or capacity to a grossly unfair degree." (*Id*. at 528.)

Under Rule 42, "common" questions must predominate over questions

affecting only individual class members. Tex. R. Civ. P. 42(b)(4). A common question exists when the answer as to one class member is the same as to all. *Spera v. Fleming, Hovenkamp & Grayson, P.C.*, 4 S.W.3d 805, 810 (Tex.App.—Houston 1999, no pet .). Common questions that do not produce common answers do not satisfy the Rule 42 commonality requirement. *Wente v. Georgia Pacific Corp.*, 712 S.W.2d 253, 257 (Tex.App.—Austin 1986, no writ). The "predominance requirement ... is one of the most stringent prerequisites to class certification." *Southwest Refining Co. v. Bernal*, 22 S.W.3d 425, 433 (Tex. 2000). Courts determine if common issues predominate by identifying the substantive issues that will control the outcome of the litigation, assessing which issues will predominate, and determining if the predominating issues are, in fact, common to the class. *Id*. at 434. The test for predominance is not whether common issues outnumber uncommon issues, but whether common or individual issues will be the subject of most of the litigant's and court's efforts. If, after common issues are resolved, presenting and resolving individual issues is likely to be an overwhelming or unmanageable task for a single jury, then common issues do not predominate. *Bernal*, 22 S.W.3d at 434. Ideally, a judgment in favor of the named plaintiffs should decisively settle the entire controversy, and all that should remain is for other class members to file proofs of claim. *Id*. It is improper to certify a class without knowing how the claims can and

will likely be tried. *Id*. at 435. Individual scrutiny by the trial court is necessary to ensure that certification does not "restrict a party from presenting viable claims or defenses without that party's consent." *Id*.

The Court granted certification of claims of unconscionability under the DTPA. Unconscionability requires proof of (1) an act or practice that, (2) to a person's detriment, (3) takes advantage of his lack of knowledge, ability, experience, or capacity, (4) to a grossly unfair degree. Tex.Bus. & Com.Code Ann. § 17.45(5) (Vernon Supp.1998). There must be a showing of what the consumer could have or would have done if he had known about the information. *See Peltier Enterprises, Inc. v. Hilton*, 51 S.W.3d 616, 623–24 (Tex. App. – Tyler 2000, pet. denied).

The proposed class has ranged in approximation from between approximately 450-575 members depending upon the data being looked at. (2CR: 278–309; 6RR: 23–24.) Disparities between the variety of ages, education, experience, and capacity of people who encountered the Hicks Defendants and engaged their services is relevant to elements three and four of the unconscionability claims and Appellants should be permitted to explore those issues to determine viable defenses. *Bernal*, 22 S.W.3d at 435. Inescapably individual differences cannot be concealed in a throng. The procedural device of a class action eliminates the necessity of adducing the same evidence over and over again in a multitude of individual actions; it does not lessen

the quality of evidence required in an individual action or relax substantive burdens of proof. *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 693–94 (Tex. 2002).

Of the voluminous documents submitted to the Court at the certification hearing on July 10, 2014, PX1 and DX1, DX3 & DX4 contains documents most relevant to the appellate court's review of the district court's certification of the unconscionability cause of action. PX1 contains files retrieved from the Hicks Defendants pertaining to services provided by them to clients from 2005 onward. (6RR: 18; 8RR: 155.) Of those files appearing in PX1, approximately 211 of them contain no reference to Appellants. (8RR: 298–310) Only 24 of them contain references to Appellant Healy, Milne & Associates, Inc either in an "engagement letter" (contract) or other reference. (8RR: 315–317). Only 51 of them contain any reference to Peter G. Milne or Peter G. Milne, PC either in an "engagement letter" (contract) or other reference. (8RR: 318–320) In 16 of those files where reference was made to Healy, Milne & Associates, PC or Peter G. Milne, PC, such references were dated at times when Peter G. Milne, PC or Healy, Milne & Associates, PC were terminated entities.[1] Of those client files appearing in Exhibit PX1 all but the those

---

[1]

 Peter G. Milne, PC was formed January 12, 2005 and officially terminated December 12, 2007, but performed no business from October 4, 2006 until its termination. Peter G. Milne PC was reinstated effective July 27, 2010. (4CR: 509–525.) Healy, Milne & Associates, PC was formed on October 4, 2006 and terminated effective December 27, 2010, but performed no business from July 27, 2010 until its termination. (*Id*.) References were made to Peter G. Milne, PC or Healy, Milne &

appearing in the following footnote were clients whose dealings with the Hicks Defendants appear to have taken place through a Power of Attorney ("POA") or other Responsible Party ("RP").[2] Appellants urge they should not be denied individual inquiries into whether and to what extent each of these clients, or their POA or responsible parties on their behalf, were taken advantage of due to lack of knowledge, ability, experience, or capacity, if any. (5RR: 42–44; 6RR: 79–83.)

Appellants would urge that they are in a unique position in this litigation by virtue of the fact that the Hicks Defendants have not even filed an answer, let alone shown any interest in asserting any defenses to the allegations being made by Appellees. This makes Appellants' interest in pursuing viable defenses that are not but could otherwise be asserted by the Hicks Defendants all the more important.

---

Associates, PC in files pertaining to the following people at times when both entities were not performing business or had terminated. Bohling, Robert, Boyd, Beatrice, Brown, Jimmy & Elizabeth, Byrd, Ron, Cadena, Noe, Calendar, Odaysel, Chapa, Esther, Clark, Cochran, William, Bruce & Laura, David, Robert, Millard, Derosset, Eads, Gerard, Finley, Doris, Guidry, Lula, Harris, Mary Ruth, & Jones, Edward. (2CR: 279–287, 289–90.)

[2] Askew, Bassett, Beasley, Benefield, Bland, Blomquist, Bohling, Bomer, Booth, Brady, Brown, Jimmy & Elizabeth, Burgamy, Cable, Camp, Cannon, Carter, Catlett, Chandler, Chapa, C., Clark, O., Cochran, Collins, Concepcion, Conner, Cordell, Craig, Dailey, Deaver, Denney, Dews, Dutoit, Eckstadt, Elledge, Elliot, Fleming, Futch, Gaddie, Garcia, R., Gonzalez, J., Goodman, Goodner, Grider, Grigg, Guidry, Guinn, Gurganus, Haight, Hallbrook, Hallette, Hancock, Hand, Heldt, Heppner, Hernandez, H., Hernandez, P., Herwood, Higginbotham, Hippler, Honeycutt, H., Honeycutt, K., Hood, Florine, Hood, Floyd, Hooper, P.B., Hornbuckle, Horton, House, Huff, Isaacks, Jackson, Nancy, Jackson, R., Jones, E., Jones, L., Jordan, Kirby, Lackey, Landon, Lavender, Wiklund, Wilbanks, Williams, J., Williams, T., Wrentz,

**III.** **The district court erred by certifying claims of unconscionability and breach of fiduciary duty against the Hicks Defendant because they are not typical of Appellees claims**

The claims of the class representatives must be typical of the claims of the class as a whole. Tex. R. Civ. P. 42(a); *Gilchrist v. Bolger*, 89 F.R.D. 402, 406 (S.D.Ga.1981); *Pellman v. Cinerama, Inc.*, 89 F.R.D. 386, 389 (S.D.N.Y.1981). The United States Supreme Court has defined the typicality requirement as mandating that the representative "possess the same interests and suffer the same injury." *East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 403 (1977). Although it is not necessary that the named representative suffer precisely the same injury as the other class members, there must be a nexus between the injury suffered by the representative and the injuries suffered by other members of the class. *See Gilchrist*, 89 F.R.D. at 404–05.

The claims of unconscionability and breach of fiduciary duty against the Hicks Defendants are not typical of Appellees' claims. Unlike the acknowledged clients, Appellees had no contract with Hicks. (2CR: 234–235, 5RR: 27, 6RR: 48.) Unlike approximately 211 members of the proposed class for which there was no evidence that Hicks represented Appellants' involvement, Appellees have testified that it was falsely represented to them that Appellants were involved. 6RR: 31, 8RR: 298–310.)

**IV.** **The district court erred in certifying claims for declaratory judgment against Appellants in violation of Tex. R. Civ. P. 42(b)(2) because the proposed claims for class-wide relief relate exclusively or predominately to money damages**

Injunctive or declaratory relief is not appropriate when "final relief relates exclusively or predominately to money damages." In *Allison v. Citgo Petroleum Corp.*, the Fifth Circuit held that "monetary relief predominates . . . unless it is incidental to requested injunctive or declaratory relief." 151 F.3d 402, 415 (5th Cir. 1998). Incidental means that "damages flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." *Id*. The mere recitation of a request for declaratory relief cannot transform damages claims into a [Rule 23(b)(2)] class action. *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 978 (5th Cir. 2000). [Rule 23(b)(2)] states that certification is proper for a class seeking "final injunctive relief or corresponding declaratory relief." *Id*. Thus, the declaratory relief must "as a practical matter afford[ ] injunctive relief or serve[ ] as a basis for later injunctive relief." *Id*.

Similar to *Bolin*, Appellees seek declaratory relief under the Texas Uniform Declaratory Judgment Act that the Hicks Defendants and Appellants were in violation of the 2001 Injunction. However, "besides authorizing a declaratory judgment, the declaratory judgment act does not create remedies otherwise unavailable to the

plaintiffs." *Id*. at 977. In this case, there are no "specific claims that form the basis of . . . the declaratory relief" – Appellees only seek a declaration that the Hicks Defendants or Appellants are in violation of the 2001 Injunction for which monetary damages are not an incidental result.

Certification under Tex. R. Civ. P. 42(b)(2) was an abuse of discretion because the only meaningful relief sought on behalf of the class is for monetary damages, not declaratory relief.

## CONCLUSION AND PRAYER

Appellants would show that the district court abused its discretion by failing to correctly apply the law to the undisputed facts or acted arbitrarily, unreasonably, or without reference to any guiding principles by improperly defining the class, certifying claims of unconscionability and breach of fiduciary duty against the Hicks Defendants when common issues of law and fact do not predominate and Appellees claims are not typical of the proposed Class, and certifying claims for declaratory relief against Appellants upon which the relief sought is predominately or exclusively monetary. Appellants respectfully request that this Court reverse the judgment of district court and remand to the district court to decertify the class.

## CERTIFICATE OF COMPLIANCE WITH RULE 9.4(e)

1.    This brief complies with the type-volume limitation of Texas Rule of Appellate Procedure 9.4(e)(i)(2)(B) because, according to the Microsoft Word 2010 word count function, it contains 2,683 words on pages 7-17, excluding the parts of the brief exempted by Texas Rule of Appellate Procedure 9.4(e)(i)(1).

2.    This brief complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because it has been prepared in proportionally spaced typeface using Microsoft Word 2010 software in Times New Roman 14-point font in text and Times New Roman 12-point in footnotes.

 /s/ J. Chad Parker
J. Chad Parker

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the *Brief of Appellant PETER G. MILNE, IND., PETER G. MILNE, P.C.* was served by electronic service and/or email to the following counsel of records on February 17, 2015.

James A. Holmes
Law Office of James Holmes, PC
212 South Marshall
Henderson, TX 75654
Via Email

Peter G. Milne
Peter G. Milne, PC
327 W Houston
Tyler, TX 75702
Via Email

                      /s/ J. Chad Parker
                      J. Chad Parker